Mrs. O'Quarra, can you hear me? Yes, Your Honor. Good afternoon. And Ms. Ray, can you hear me? I can, yes, Your Honor. Thank you. Okay, we'll proceed. Ms. O'Quarra, you're up first. Good afternoon, Your Honor. May it please the Court, Chieke Kalua-O'Quarra for Mr. Caldwell. We're asking this Court to vacate Mr. Caldwell's conviction on all the four counts and remand the case for a new trial. I filed a Rule 28J letter yesterday with regards to count four of the conviction. I think based on RAHEF, as well as this Court's decision in USAV Medley, that that's dispositive because Mr. Caldwell was convicted of possession of a firearm by a convicted felon. And that was prior to the RAHEF decision. The indictment, the jury instructions did not have the knowledge requirements. So I think that takes care of count four. That count four, his conviction should be reversed on that count and sent back. Counsel, can you answer this question for me? So you raised for the first time the RAHEF issue in your reply brief, which was right after RAHEF was decided. And so I don't believe it's waived as a result of not being raised until the reply brief. But when I read the reply brief, there's no argument made as to why you satisfy the third or fourth prongs of plain error review. There's no argument at all. And so what I'm curious as is for failing to provide any argument or record support for those two prongs of plain error, why we should not consider the RIAF argument waived given the failure to brief it in the reply? I believe I raised it when I talked about Gary in my reply brief, where I talked about the lack of knowledge and I addressed the issues of plain error, the four prongs. And then obviously the Mendley decision is a- Can you just give me a page that you want me to look at? And then let me ask it a slightly different way. Assuming that you did not, do you agree that it's waived? I wouldn't agree that it's waived, Your Honor, because the case is still on appeal. This court has entered the decision in Mendley that said we have previously addressed the issue in the case of a guilty plea, which was Gary. And then in Mendley last year, you addressed it in the context of a jury trial. And the facts in Mendley seem almost on the same prong with Caldwell in that it was a jury trial. He was convicted. The indictment, the instructions, all did not contain that. And I believe in Gary, this court actually held that failure to include that element is a structural error that requires the case to be remanded. Let me ask you this. During the jury trial, you spoke to the jury and said he stipulated to being a convicted felon. That is true. And that is exactly why he knows that if he's previously been convicted of a felony, he cannot possess one. And that's why he did not possess one in this case. How do we handle that argument, which you basically took from the jury and said that's not an issue in this case? We end this stipulation and maybe in light of current law, this stipulation is specific and only said as Mr. Caldwell has been convicted of a felony. And the stipulations appear on pages one, five, four and one, five, five of the joint appendix. And then I'm not talking about the stipulation. I'm talking about this statement. And that is exactly why he knows that if he's previously been convicted of a felony, he cannot possess one. And that's why he did not possess one in this case. Well, I guess I misrepresented the stipulation of my client to the court because his stipulation appears on page one, two, one and one, six, three, seven of the joint appendix. And all it says is that he had previously been convicted of a felony. So if I said that, then that's an effective assistance of counsel on my part because I was not authorized to give that kind of concession. What we stipulated to what the record is and what the jury instruction says, how the court instructed them was to say he has been convicted previously of a felony. So that fact is not disputed. And the questions the jury had to answer was one, has he been convicted of a felony? One. And two, did he possess a firearm? So I said, we're not contesting the fact that he's been convicted of a felony, but we're contesting the fact that he possessed a firearm and that he did not possess a firearm in this case or firearm. Now, you do know that the Supreme Court has this issue actively. They granted cert on this. I know in the Gary case. Yes, Your Honor. And Greer, yes. And so what are we supposed to do with that? But the court knew about that when this court issued its decision in Medley, I believe it's... I know Medley and Gary are basically subject to further disposition by the Supreme Court, right, on this issue? But at this time, it is the law of the circuit. Medley has been vacated. It's pending on bank review. It is not the law of the circuit. Okay. I wasn't aware of that. So I still maintain my argument. At least Gary is still the law of the circuit. The Supreme Court has accepted it. I don't believe there have been any arguments or that it's been overturned and that was an in-bank decision. So it's still the law of the circuit in this case. All right. Do you have anything further? And Your Honor, the other big issue that I raised was... Well, it's not just the only issue. The other issue was the attorney conflict. Mr. Nicholson, Mr. Caldwell, my client, is accused of committing an armed robbery with two individuals, Mr. Cole and Mr. Mitchell. Mr. Caldwell never entered the bank. Mr. Cole and Mr. Mitchell were the ones who allegedly entered the bank. Mr. Caldwell was initially prosecuted in state court. Mr. Caldwell had been represented by the Public Defender's Office in Charlotte, Mecklenburg County, based on the records in the JA, from at least 2013 through 2016. He was charged in state court. Mr. Cole was also charged. And because the Public Defender's Office was representing Mr. Caldwell, they found out, gave away Mr. Cole's case to an outside counsel, Mr. Sanders. After the jury hung in Mr. Caldwell's case the first time, the state indicted Mr. Mitchell. And Mr. Nicholson of the Public Defender's Office started representing Mr. Mitchell. I found out about that when Mr. Caldwell's case was scheduled for retrial in May of 2018. I moved to disqualify Mr. Nicholson from representing Mr. Mitchell because it was a conflict. The judge overruled that. It was a conflict. I cited cases in North Carolina state boroughs that say a Public Defender's Office is treated like a law firm and you cannot represent clients when competing interests in the same matter. There is no doubt that Mr. Mitchell, Mr. Caldwell, and Mr. Cole were charged in the same matter. And if the Public Defender's Office represented Mr. Caldwell, they cannot turn around and represent Mr. Cole and Mr. Mitchell. The court overruled that, citing a case from Iowa that said that there was no actual conflict. But the Iowa case is inapplicable because in that case, the defendant actually had no problem with the attorneys representing him and actually asked the appellate court to vacate the other disqualified counsel. In this case, Mr. Nicholson's representation of Mr. Mitchell created an actual conflict for Mr. Caldwell. Not only did Mr. Nicholson create a juvenile court worksheet that probably did not adequately represent Mr. Mitchell's juvenile record, which the court did not allow me to go into, the court allowed Mr. Nicholson to confer with Mr. Mitchell prior to me cross-examining him. And after he conferred with him, that's when he came back and said, oh, the private investigator from my office came and talked to him and represented herself as his attorney, etc., somebody from his attorney, which were things that hadn't happened before. Mr. Nicholson, initially, after I filed the motion, the government contacted him and said, oh, he didn't know anything about the case. He admitted that Anna McMillan, who represented Mr. Caldwell, had represented Mr. Caldwell. He had access to her files, although he didn't look at the file. He said when he found out about the motion based on the government's contact, he contacted the state bar. He cited different rules, rule 17 and 19, and said the bar said that wasn't a conflict. I said, look at rule 110. Rule 110 deals with specific conflicts of interest, and the public defender's office is represented as a firm. And if you had previously represented Mr. Caldwell, you cannot represent Mr. Mitchell in the same case, because Mr. Mitchell is coming to testify against the client of the firm. During trial, the court took a recess. He contacted the state bar, and the state bar says, yes, you cannot represent him. It is a conflict. It is an actual conflict. And then he said, oh, but the state bar says there is a conflict, but I can represent him in this proceeding. And right after I represent him on the pretext that I'm going to withdraw, those were his words. And then he withdrew after the representation. Like I said, the judge gave him break to go talk to Mr. Mitchell before I could cross-examine him. Whatever information he provided, that clearly was in conflict to the prior representation of Mr. Caldwell. Allowing him to create a juvenile court worksheet that wasn't a court record to represent it as Mr. Mitchell's delinquency history is clearly acting with information that would hurt Mr. Caldwell by not allowing me to properly speak. When he found out that their office, let's give him the benefit of the doubt, he did not know until the government notified him of my motion. Question is, why didn't he withdraw right then and get a different counsel? Why was he insistent that he had to come represent to the court that the state bar said there was no conflict, cite the wrong rule, and eventually during trial said, okay, there is actually a conflict. So there was a conflict. It was contrary to interest to be representing Mr. Mitchell against Mr. Caldwell. And I think the conflict, if we look at the way the records were presented, the court allowing him to counsel Mr. Mitchell before cross-examination, and there's no doubt it was the same case. It is the very same case where the public defender's office had represented him. Mr. Caldwell's stipulation to a prior felony conviction was also the same conviction that the public defender's office, Anna McMillan, had represented him in prior years. The offense occurred in 2013, and he pled guilty to it in 2015. All those are in the joint appending. So it's not just they represented him at one time and dismissed. Mr. Caldwell had a long, ongoing relationship with the public defender's office, and the court seemed to be more preoccupied with making sure that the trial goes than making sure that Mr. Caldwell's rights were protected. And based on Mr. Nicholson's actions during the proceeding, it's not just the state that said it's imputed conflict and that he should withdraw, but his actions during the trial, counseling Mr. Mitchell against Mr. Caldwell, preparing a worksheet that was improper, that wasn't a court record, referencing it as a court record. And I talked about some of those, like the juvenile court worksheet he prepared had a 2017 case number and was improperly numbered. And I pointed that those are listed in the joint appendix. 2098, he prepared a one-document worksheet, and I talked about how juvenile records are created and those that play on joint appendix 1395 to 1401. Mr. Nicholson should not have represented Mr. Mitchell at the trial. The court said you found out on May 11th and you filed the motion on May 13th, May 18th. He didn't testify until 11 days later. The way to avoid the conflict and make sure that Mr. Caldwell, his due process rights are protected is get a different counsel for him. Get somebody as the government addresses that I'm against Mr. Mitchell testifying. I was more against having an attorney from a firm that had previously represented Mr. Caldwell to represent him and counsel him and participate in the proceedings at the jury trial. The North Carolina State Versailles, it is a conflict, and you cannot represent him. I'm bringing a case from Iowa that says, oh, you can. The court should not have allowed that, and the court should find that my client's rights were violated and that the case should be reversed for a new trial. Another issue that I wanted to address was the search of the vehicle. The government, after the armed robbery, there's no doubt my client never went into the car. He indicated that he was carjacked, even though the court or the government expressed opinion that nobody would believe that. There was a hung jury in January of 2018. He was convicted after a retrial, so it wasn't completely preposterous that he claimed that he had been carjacked and robbed by these people or taken. When they found the vehicle, they said they found it outside the house. They towed the vehicle to the police station. After they towed it, then they went and obtained a search warrant. Search warrants in North Carolina are valid for 48 hours. This search warrant was valid for 48 hours. Although the officer testified at some point or the court asked about impounding the vehicle, the vehicle was never impounded. The search warrant indicates and the document shows that the vehicle was seized. But when you look in the joint appendix, some of the documents, it shows the vehicle was never impounded. That is why they went and got a search warrant, and the search warrant expired after 48 hours. So the search on December 9, 2016 was proper because they had a search warrant. And to say that, oh, we had probable cause or there's an automobile exception to go get the vehicle on December 22nd. I disagree with that because the government talks about on page 40 of their brief and says in U.S.B. McCall. Explaining that a review cost test when a defendant challenges the delay between the issuance of a search warrant and his execution is to decide whether a valid search warrant became invalid due to lapse of time. The search warrant in this case was issued on December 9, 2016, and it expired 48 hours later. So to go and search the car and say, in one breath, you say, oh, we had probable cause, we had automobile exception, and then you go and search it. You recover the car outside a house, and that's why they went and got the search warrant. Wrap it up a little bit. We got you on overtime. So see if you can finish your thought, okay? So the automobile exception doesn't apply because the vehicle was not mobile and the time the search warrant had expired and it was an improper search. Thank you. Thank you. You have some rebuttal, and we'll come back to you. Ms. Ray. May it please the court. Amy Ray for the United States. Addressing first the Medley issue that Ms. Aquara raised for the first time yesterday, she did argue, she put the word Ray Haif in her reply brief, but there was no argument that identified the issues that this court decided in Medley. And as Your Honor, Judge Richardson has noted, that opinion has been vacated anyway. But the issues that she would have had to identify to properly present some argument would be, one, that the indictment was inadequate, and two, that the jury instructions were inadequate. Those words do not appear in her reply brief. She did not make the legal argument that would have supported relief under this decision, this court's decision in Medley. So she has waived, the defendant has waived that issue. And I would note, in addition to the argument that she made, I mean, we'll see what the Supreme Court does in Greer. I believe that this court should not wait on Greer and should hold that the argument is waived. If, however, it's not waived, then I suppose this court should hold this case in abeyance pending Greer and let the party supplementarily brief it if there's any question. I do note that Mr. Caldwell had previously been convicted of possessing a firearm as a convicted felon. In addition to what was argued. Mr. Ray, can I ask you a question that you may not know the answer, and it's fine if you don't. But if we were to vacate the 922G conviction on remand, would that affect his sentence? Or would he be a career offender under the 924C, the count three, which would increase his statute or his guideline range in the same manner that it was increased in his PSR? Yeah, you know, I should know the answer to that, Judge Richardson. When I looked at it, I noticed that there were concurrent sentences and thought, oh, then it wouldn't make a difference. But you're right that I should have looked at the calculation of the guideline range. So I'm honestly not sure about the answer to that.  That's a little off the wall. Would that make a difference? I think we've addressed the effect or not on a sentence. But if there's a conviction that's vacated, that is something we have to fix, don't we? Because of future consequences. It depends on whether or not the court, if there is a sentence. OK, let me put it this way. In terms of analyzing under plain error, whether it had not affected the defendant's substantial rights. No, I don't think that that would be part of the analysis. If we vacated, we would have to either vacate or affirm 922G, right? The conviction court? Yes, absolutely. But I guess I took Judge Richardson's question to go to, and maybe did or did not, I don't know. But I was taking his question to go to the substantial rights prong of the plain error analysis. The fourth prong as well. I mean, the third and fourth prong makes no difference. Perhaps we would not exercise our discretion to notice it, even if it was a plain error. Exactly right. And so I think one of the questions in that third prong or fourth prong would be, does it affect his sentence? Did it affect him at all? And if it didn't affect the guideline range on that count, then it wouldn't. And I will say, well, I guess I just won't take a guess. And I do apologize, because actually I should have anticipated that question. So we believe that issue is raised. Turning to the questions, the other issues in the case, and one thing I guess I would also note is, of course, just in response to the reply brief, the Davis issue, there's no merit there because this court held in McNeil that armed bank robbery is a crime of violence under Section 924C's definition of that term. So there's no Davis in the issue in this case. That's the other argument that she made for the first time in her reply brief. Turning to the threshold issue of the search in this case, the police gave Mr. Caldwell more than the protections that are required by the Fourth Amendment, because the automobile exception applies on all fours in this case to authorize that search. In Gastier-Barrett Bureau, this court made clear that just because a car has been impounded or is in the custody of the police does not alter the fact that police still may use the automobile exception. That is to say that the Fourth Amendment authorizes the police to search that car for evidence as long as they have probable cause that evidence of a crime will be found in that car. And the police in this case saw through the window ample evidence to support that probable cause, a gun, clothing that matched the description, a ski mask. So they had probable cause to search the car. And actually, it was interesting as I was going back through the testimony again, Detective Covado explains why he got the search warrant. He just wasn't clear about the automobile exception. So out of an abundance of caution, he explains, he got the search warrant. The fact that the search warrant, whether it exists or not, really doesn't matter in this case because the automobile exception applies to authorize both the initial search and the search on December 22nd. Because in Gastioboro, the court also made the point that the timing, the Supreme Court has made clear that certainly, at least within reason, there is no time limitation on the automobile exception. As long as probable cause would still exist and the car was sealed in this case, that probable cause continued to exist between the 13 days, between the initial search and the later search. And at the end of the day, the Fourth Amendment is about reasonableness and the officers acted reasonably when they couldn't get into the trunk and later returned less than two weeks later and accessed that area of the car. Addressing Ms. Aquara's conflict of interest claim, the district court acted very reasonably in this case. It went through an entire inquiry into what Mr. Nicholson knew. Of course, Mr. Nicholson did not represent Mr. Caldwell. He represented a witness. So, there is no allegation that the defendant himself was represented by any attorney, by an attorney with any kind of conflict. What the allegation is, is that Mr. Nicholson represented a witness and that there was an imputed conflict of interest. In that situation, even though in the end, the judge found that yes, or the state bar representative eventually said, yeah, there's an imputed conflict of interest. But Judge Cogburn did exactly what he should have done, which is to find out, could that possibly have affected Mr. Caldwell? And the answer was no, because Mr. Nicholson testified that he had no knowledge of Mr. Caldwell. In fact, he did not even realize that his co-worker had represented Mr. Caldwell until three days before he was at the hearing himself. And so, he said he learned on Monday and the day of that hearing was on Thursday. That's the first time he knew he had never seen anything related to his case. He didn't have easy access to his files. And there's no question but that Mr. Caldwell has to show some prejudice. If it's based on an imputed conflict and no actual conflict of interest, nothing that would have affected, apparently, Mr. Caldwell's interest, he's got to show prejudice. When his attorney, it's himself, his attorney did not act under a conflict. And he has not shown that prejudice. Your Honor, there were, let's see, at least six other issues raised in this case. And I'm happy to address any one of them that this court has concerns about. I guess the only other issue that was touched upon by Ms. Aquara in her opening argument was the juvenile records issue, which she seemed to raise that in the context of the conflict of interest claim. The juvenile records issue, again, Judge Cogburn acted very reasonably. He ensured that the government had done what it could, which was to obtain information, a list of prior convictions or prior juvenile adjudications that both Mitchell and Cole had received. And also, I note that the government did provide a lot of other information that was requested throughout this trial. And if the court reads the transcript, it's apparent that I think the government did it. Let me ask you regarding the conflict of interest. Was there any information provided indicating the practices within that office that the two attorneys worked in? In other words, were they in the same, I guess it's the same kind of work, but same supervisor, any of that indicated there was some connection with them in the office in terms of how they might consult on the cases? I mean, we all do that, even judges do it from time to time, consult one another. And it's just a question. It's interesting the state bar took that position. And it's an ongoing issue in terms of what goes on. And was there anything in the record to indicate that? Not at all, Judge Winn. There's nothing in the record to indicate that. And what I would say was responsive to that question was Mr. Nicholson's statement to the district court that he did not know anything about Mr. Caldwell or anything about his case. So if there was any consultation between those attorneys, she kept his name out of it and enough facts for him not to be able to identify the case. Of course, if he represented Mr. Mitchell, he would have known about Mr. Caldwell and probably would have recognized the facts of the case pretty quickly. Did he continue to represent him even while he was a witness or was another lawyer assigned on a time period? No, while he was a witness, he was allowed to represent him because the state bar representative indicated that it would be okay for him to represent Mr. Mitchell during the trial. And Judge Cogburn, by the way, said, you know, Mitchell's going to testify. We can get him a new counsel if we need to. He was open to that possibility. But the state bar representative said it was okay for Nicholson to represent Mitchell during the trial as long as Mr. Nicholson withdrew from representation after the trial. But more importantly, there's there's no indication on the record that that testimony, that evidence of strike that that Mr. Nicholson's representation of Mitchell during the trial affected Mr. Caldwell at all. And Ms. Zucora was. Am I fair to say, I mean, I'm just trying to put myself in the district court's position. He has an obligation both to Caldwell and the witness. They both have rights. He's trying to balance those two. Is that sort of balancing of interest? Is that the sort of discretionary aspect that we see in some of these cases? Yeah, absolutely, Your Honor. And I didn't find many cases where we had this kind of a conflict. The closest one I found was the Eighth Circuit case, Ramon Rodriguez, which I believe is cited in my brief. And but yeah, it's it's it is. It's a balancing of interests. He had to make sure that Mitchell had representation. And he also had to make sure that Mr. Caldwell had conflict free representation, which he did. And I think Mitchell's representation was affected. Right. Not somebody absolutely didn't know anything about the case or didn't know him. But the person who he knew and had worked with to this point. And I mean, you can see that balance going lots of different ways. But that seems OK. Thank you. I think that's right. And I think that's probably why the state bar representative said it's OK for today, because it was important for him to have competent representation during that day. And Judge Cogburn was open to the possibility of appointing new counsel and going through whatever he needed to go through to do that. But I just think at the end of the day, we have to ask ourselves if the district court acted within its discretion in the way it handled that challenge. And he did. Judge Cogburn acted very reasonably in protecting everyone's interests. If your honors don't have questions about the remaining issues, I feel like we can rest on our brief. And the government respectfully requests that this court affirm the judgment of the district court. Thank you. Ms. Acquara. Yes, Your Honor. The court did address the conflict issue. And Mr. Nicholson indicated that they have a process where conflicts are sorted out. And my question that came up that's in the record is Mr. Caldwell was the first person arrested. The public defender's office represented him. Mr. Cole's case was found out. So it kind of behooves anyone to see why Mr. Cole, the second defendant, they gave his case to a private counsel. And then Mr. Nicholson came back to represent Mr. Mitchell. And there was a conflict. The court was adamant in allowing Mr. Nicholson to represent Mr. Mitchell. The bar has said, and I cited in the joint appendix, the bar rules 1.10. He cannot represent him. You don't have to show conflict. Conflict is imputed to him. It was the same case. It was the same matter. His office had represented Mr. Caldwell for several years. So that should not have been allowed. If you look at Joint Appendix 103, it shows the stipulation was a conviction where this office had represented him. Mr. Caldwell was prejudiced by Mr. Nicholson continuing to represent Mr. Mitchell. As I indicated, the court allowed Mr. Mitchell to confer with Mr. Nicholson after his direct examination, before cross-examination. It did not even afford that to Mr. Cole, who had his own attorney in the courtroom. So he was really impacted. And then Mr. Mitchell comes out and testifies differently. The vehicle, the search warrant was obtained, but the search warrant had expired because the search warrant was only valid for 24 hours. The search warrant appears on Joint Appendix 112. That's regarding the vehicle. It shows it was issued on December 10, 2016 at 9.55 a.m. and that it expired on December 10. 12.43 a.m. is what the document shows. That's on JA 112. What's your answer to the automobile exception? That's my answer. The McCaul case said if there's a delay. I'm saying they recovered the car from a property, from a house, and towed it to the law enforcement center. That's why they went and obtained a search warrant. The search warrant had expired. There was no holdup. I understand, but I'm saying if we don't focus on the search warrant, but assume there was no search warrant and rely on the automobile exception, what is your answer? The proposal is that's what we do. What is your answer to that? I would say there's no automobile exception. Mr. Caldwell was already in custody. The car was not movable. They did see some things in plain view. They went and obtained a search warrant. So if they went and obtained a search warrant, there was a reason they obtained the search warrant rather than a search warrant. I understand, but let's forget the search warrant. They don't determine the law. The question is, did the automobile exception apply? And if it didn't, why not? I would say because it was an illegal set, because they also made contact with the owner of the vehicle, which is in the record, Desmond Graham. They could have contacted him because the officer who testified at the suppression hearing said we made contact. They could have gotten his contact. But the owner hasn't objected. The owner hasn't objected. It's your client that objected. No, they didn't ask. But the question still is, the argument the government's making is that it did it under the automobile exception. And I just want to know what, why that doctrine does not apply. It doesn't apply. It wasn't movable. There was no evidence in the crime. The car was outside at a residence. So, you know, the illegal searches without a warrant are per se unreasonable. And I'd ask the court to vacate his conviction. I look very seriously at the documents, the North Carolina Rules of Conduct. Representation of Mr. Mitchell against Mr. Nichols and Mr. Caldwell in the same matter was a conflict of interest. The State Bar will say you can't do that. It's not for the district court judge to say I'm not going to follow the rules. He was more interested in protecting Mr. Mitchell's rights than Mr. Caldwell's rights to due process. I would like the court to vacate the conviction and as well as the 924C. The indictment, the instructions had nothing to do with knowledge in the interest of justice and to avoid the charge of justice to my client. Thank you. Thank you, Ms. Afar. I understand you're a court appointed. I am, Your Honor. I want to recognize that. It's so very important as you understand. You did a terrific job and we very much appreciate your service in that regard. We also would come down and greet you both in the ordinary course. But things are different right now and we can't do that. But we do, as a court, extend our gratitude for your arguments and thank you for appearing before us today. Thank you. With that, we'll proceed on to the next case.
judges: Paul V. Niemeyer, James A. Wynn Jr., Julius N. Richardson